IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

COLONY INSURANCE COMPANY,

        Plaintiff,

v.

BEAR PRODUCTIONS, INC.,

        Defendant.

Case No. CIV-12-122-RAW

# ORDER & OPINION[1]

Colony Insurance Company (hereinafter "Colony") filed this action on March 16, 2012, seeking a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*[2] Colony seeks a declaration that Bear Productions, Inc. (hereinafter "Bear") is not entitled to defense or indemnity coverage under either of two Colony liability policies in connection with an underlying environmental damage lawsuit filed in the District Court in and for LeFlore County, Oklahoma (hereinafter "Underlying Action").

Now before the court is Colony's motion for summary judgment [Docket No. 25]. Colony argues that there is no genuine issue as to any material fact and that it is entitled to summary judgment as a matter of law. Bear argues, *inter alia*, that the liability policies at issue provide Bear with coverage, that the policies are ambiguous, and that read literally, the policies

---

[1] Throughout this Order & Opinion, the court cites to the record. For clarity and consistency, the court uses the page numbers assigned by ECF.

[2] Section 2201 provides in pertinent part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

eliminate virtually all coverage for risks inherent to Bear's business. For the reasons delineated below, the motion for summary judgment is hereby granted.

**Underlying Action**

The Underlying Action, filed on October 6, 2011, is a class action[3] lawsuit against Bear and several other defendants[4] based on, *inter alia*, the defendants' alleged disposal of waste materials that resulted in a noxious and harmful nuisance, pollution and contamination.

An Amended Complaint was filed on October 4, 2012.[5] The Amended Petition states that Bear's "business includes the transport and disposal of Produced Fluids, saltwater, and other waste materials from oil and gas well drilling, completion and production operations to the MMHF[6] Disposal Pit." Docket No. 54, Exh. 1, LeFlore County Amended Petition, at 22.

The Amended Complaint lumps Bear in with other defendants under the title "Produced Fluid Defendants" and states that the action is brought against them to "recover for injuries . . . as a direct result of the negligence, gross negligence, negligence *per se*, noxious and harmful nuisance, pollution and contamination, trespass, diminution of property values and business

---

[3] The class consists of the named plaintiffs and "other similarly situated persons" who seek to recover for alleged injuries to person or property caused by exposure to coal waste or produced fluids that the defendants allegedly generated, transported, disposed, released or permitted to escape. Docket No. 54, Exh. 1, LeFlore County Amended Petition, at 7.

[4] The original Petition names 24 defendants. The Amended Petition names 73 defendants.

[5] On October 25, 2012, Bear provided Colony's counsel with a copy of the Amended Petition, a renewed request for coverage in the Underlying Action, and an invitation to amend its Complaint in this declaratory judgment action.

[6] MMHF is "Making Money Having Fun, LLC," another defendant in the Underlying Action. It is allegedly the owner and/or operator of the disposal pit at issue in the Underlying Action. Docket No. 54, Exh. 1, LeFlore County Amended Petition, at 8.

interest, personal injury, unjust enrichment, and violation of public trust . . . ." Id. at 10. The plaintiffs allege that "[b]eginning in 2003 or before," and continuing "[o]ver the course of 7 years it is believed" that Bear and other defendants "transported and disposed of the Produced Fluids at the MMHF Disposal Pit." Id. at 29-30. The plaintiffs allege that exposure to the Produced Fluids caused them "injuries to their person, real property and personal property." Id. at 7.

The term "Produced Fluid" in the Amended Petition is defined: "Produced Fluid is generated during the drilling, completion, and production phases of oil and gas operations. Subsurface formations are typically permeated with fluids such as saltwater and hydrocarbons. 'Produced fluid' is defined under Oklahoma law as a deleterious substance." Id. at 30. The Amended Petition states the following five causes of action against Bear: (1) public and private nuisance; (2) trespass; (3) negligence; (4) negligence *per se*; (5) unjust enrichment.[7] All are based on Bear's alleged transport and disposal of Produced Fluids, saltwater, and other waste materials from oil and gas well drilling to the MMHF disposal pit.

**The Policies**

Bear has two policies with Colony, a General Liability Policy, the "Primary Policy," and an Umbrella Policy (hereinafter jointly referred to as the "Policies").[8] The Policies were in effect from March 16, 2007 until March 16, 2008. The premium for the Primary Policy was

---

[7] The Amended Complaint includes two other causes of action that are not against Bear.

[8] As Bear has pointed out, the policies attached to the Complaint are different from those attached to Colony's summary judgment motion. The policies attached to the summary judgment motion include a certification from Colony's operations manager that they are true and correct copies. The court, therefore, looks to the copies attached to the summary judgment motion.

$30,785.00.[9]  Docket No. 25, Exh. 1, Primary Policy, at 2.  The premium for the Umbrella Policy was $24,214.00.  Docket No. 25, Exh. 3, Primary Policy, at 2.

**Primary Policy**

The Primary Policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Docket No. 25, Exh. 1, Primary Policy, at 13.

The Primary Policy includes certain exclusions, including a pollution exclusion.  Bear paid $1,200.00 to have the pollution exclusion included in the main policy replaced by the rider titled, "Pollution Exclusion – Limited Exception for a Pollution Event."  Id. at 12, 14-16; Docket No. 25, Exh. 2, Primary Policy, at 17-18.  The rider states in pertinent part:

> This insurance does not apply to:
> * * *
> (f) Pollution
>   (1) "Bodily injury" or "property damage" arising out of the actual, <u>alleged</u> or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"
> * * *
>     (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste, <u>however this does not apply to a "pollution event" at any premises, site or location which is or was at any time used by or for any insured or others as salt water disposal wells or sediment ponds operated by you in conformance with applicable laws, rules and regulations,</u>
>     (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for

---

[9]One of the itemizations making up this premium amount is $1,200.00 for "POLLUTION EXCL–LTD EXCEPTION FOR A POLLUTION EVENT."

>    (i) Any insured, or
>    (ii) Any person or organization for whom you may be legally responsible,
>    <u>However, this does not apply to a "pollution event" that results from waste transported, handled, stored, treated, disposed of, or processed at saltwater disposal wells or sediment ponds, operated by you in conformance with applicable laws, rules and regulations</u>, . . . .

Docket No. 25, Exh. 1, Primary Policy, at 14; Docket No. 25, Exh. 2, Primary Policy, at 17.

(emphasis added).

The term "pollutants" in the Primary Policy refers to "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  Docket No. 25, Exh. 1, Primary Policy, at 27.  A "pollution event" is defined in the Primary Policy as:

> the actual and accidental discharge, release or escape of pollutants directly from the place, container, system or media designed to hold or handle such "pollutants" which
>
> a. Begins during the policy period,
> b. Begins at an identified time and place,
> c. Ends, in its entirety, at an identified time within forty-eight (48) hours of the commencement of the discharge, dispersal, release or escape of the "pollutants",
> d. Is not a repeat or resumption of a previous discharge, dispersal, release or escape of the same pollutant from essentially the same source within twelve (12) months of a previous discharge, dispersal, release or escape,
> e. Does not originate from an "underground storage tank",
> f. Is not heat, smoke or fumes from a "hostile fire", and
> g. You have discovered the occurrence of such "pollution event" within seven (7) days of its commencement[.]
>
> To be a "pollution event, the discharge, dispersal, release or escape of "pollutants" need not be continuous.  However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same "pollutants" from essentially the same source, considered together, must satisfy Provisions a. through f. of this definition to be considered a "pollution event"[.]

Docket No. 25, Exh. 2, Primary Policy, at 20.

### **Umbrella Policy**

The Umbrella Policy states:

We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Docket No. 25, Exh. 4, Umbrella Policy, at 2.

The Umbrella Policy excludes coverage for hazardous materials[10] and for oil and gas hazards. The hazardous materials exclusion clause states in pertinent part:

This insurance does not apply to:
* * *
(1) "Bodily injury", or "property damage" or "personal and advertising injury" which would not have occurred but for the actual, <u>alleged</u> or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time;
* * *
This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.
* * *
"Hazardous materials" means "pollutants," . . . .

Id. at 28 (emphasis added). "Pollutants" is defined in the Umbrella Policy the same as it is in the Primary Policy. Id. at 20.

The oil and gas hazards exclusion clause states in pertinent part:

---

[10]The rider titled "Hazardous Materials Exclusion" replaces the pollution exclusion at section 2. i.

> This insurance does not apply to:
> * * *
> "Property damage" included within the . . . "Saline substance contamination hazard"
> * * *
> 4. "Saline Substance Contamination Hazard" includes "property damage" arising out of or resulting from the contamination of oil, gas, water, mineral substances or other property by a saline substance.

Id. at 27.

**Summary Judgment Motion**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006).

The relationship between Bear and Colony is contractual in nature. See First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md., 928 P.2d 298, 302-04 n. 6 (Okla. 1996). The Policies impose upon Colony two basic duties – the duty to defend and the duty to indemnify. See id. at 302-03. The primary duty, of course, is to provide indemnity. Id. at 303. The duty to defend is broader than the duty to indemnify, but Colony's obligation is not unlimited. Id. The duty to defend "is measured by the nature and kinds of risks covered by the policy as well as the *reasonable expectations of the insured.*" Id. (emphasis in original).

> An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy. The insurer's defense duty is determined *on the basis of information* gleaned *from the petition (and other pleadings), from the insured and from other sources available to the insurer* at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action.

Id. at 303-04. (emphasis in original).

"The broader scope of [Colony's] duty to defend is evidenced by the ordinary policy terms that bind the insurer to defend 'even if any of the allegations of the suit are groundless, false, or fraudulent.'" Id. at 303-04 n. 10. The Primary Policy states that Colony has the duty to defend Bear against any "suit" seeking damages covered under that policy. Docket No. 25, Exh. 1, Primary Policy, at 13. "The rule in such situations is that when the pleaded allegations of the insured's adversary state facts, which, if proved, would bring the insured's asserted liability within the coverage of the policy, then the insurer is thereby obliged to defend the insured against said adversary's claim. . . ." Maryland Cas. Co. v. Willsey, 380 P.2d 254, 258 (Okla. 1963).

If, however, the allegations in the Underlying Action are such that even if proven true, coverage would not exist, and if the facts behind those allegations do not give rise to the potential of coverage, then Colony has no duty to defend. Colony "is not obligated to defend a groundless suit when it would not be liable under its policy for any recovery that could possibly be obtained therein." Boggs v. Great Northern Ins. Co., 659 F.Supp.2d 1199, 1214 (N.D. Okla. 2009) (citing Willsey, 380 P.2d at 258).

Colony has a duty to look beyond the "precise language" of the pleadings in the Underlying Action and look at the facts "behind the third [parties'] allegations to analyze whether coverage is possible." Turley, at 304 n. 13-15. More precisely stated, "if the insurer knows the true facts concerning the subject of his insured's adversary's claim, and said facts make of it a claim, or action, against which the insurer is obliged, under the policy, to defend the insured, then the allegations of the adversary's pleadings are 'incidental', and not controlling as to the insured's obligation to defend." Willsey, 380 P.2d at 258.

The relevant language in the Policies is clear and unambiguous. It is reasonably susceptible to only one meaning on its face. See Certain Underwriters at Lloyds London v. B3, Inc., 262 P.3d 397, 400 (Okla. App. Div. 1 2011) The court thus affords those terms their plain and ordinary meaning. See Bituminous Cas. Corp. v. Cowen Constr., Inc., 55 P.3d 1030, 1033 (Okla. 2002). The court also is "mindful that an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase." Id.

The parties are bound by the terms of the Policies. Id. The court may not rewrite the Policies to make them better for either party. Id. "An insured cannot insist upon a strained construction of relevant policy language in order to claim a patent ambiguity exists nor can it contradict the written instrument's plain terms under the guise of a latent ambiguity." Id. at 1034. "Courts must not torture the policy language in order to 'create ambiguities where none exist.'" Id. at 1035 (citation omitted).

All of the claims in the Underlying Action against Bear are based on its business of transporting and disposing of "Produced Fluids," saltwater, and other waste materials from oil and gas well drilling, completion and production operations to the "MMHF Disposal Pit." The term "pollutants" in the Policies refers to "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." The "Produced Fluids, saltwater, and other waste materials" in the Amended Complaint are "pollutants" as defined in the Policies.

The Primary Policy excludes coverage for bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants which are or were at any time transported, handled, stored, treated, disposed of, or

9

processed as waste by or for any insured. Clearly then, the claims in the Underlying Action are not covered under the Primary Policy whether the claims are groundless or not.

Bear, however, bargained for an exception to this pollution exclusion for a "pollution event." To qualify as a "pollution event" under the Primary Policy, the discharge, dispersal, release or escape of the pollutants need not be continuous, but must be accidental and must: (a) begin during the policy period; (b) begin at an identified time and place, (c) end, in its entirety, at an identified time within forty-eight (48) hours of the commencement of the discharge, dispersal, release or escape of the "pollutants"; (d) not be a repeat or resumption of a previous discharge, dispersal, release or escape of the same pollutant from essentially the same source within twelve (12) months of a previous discharge, dispersal, release or escape; (e) not originate from an "underground storage tank"; (f) not be heat, smoke or fumes from a "hostile fire"; and (g) be discovered by Bear within seven (7) days of its commencement.[11] Docket No. 25, Exh. 2, Primary Policy, at 20.

The Amended Petition alleges that "[b]eginning in 2003 or before" and continuing over the course of 7 years, it is believed that Bear and other defendants "transported and disposed of the Produced Fluids at the MMHF Disposal Pit." Docket No. 54, Exh. 1, LeFlore County Amended Petition, at 29-30. Bear entered a "Water Disposal Agreement" dated November 11, 2004 with MMHF to dispose of water at the MMHF Disposal Pit. Docket No. 54, Exh. 4, Affidavit of Allen King, at p. 8. The period of the Policies was from March 16, 2007 until March 16, 2008. Immediately it is clear that prong "a" is not satisfied. The alleged pollution

---

[11]Colony stated in its letter denying coverage that a "pollution event" must also be reported to Colony within 30 days. Docket No. 25, Exh. 6, December 9, 2011 letter, at p. 18-19. In fact, no such requirement is made under section f (1)(b) or (c).

began before, not during, the policy period. It has been ongoing since 2004. Even if the court were to view each disposal as a separate act or "event," each dispersal would be a repeat of a previous dispersal and thus would not satisfy prong "d." Moreover, the discharges were not accidental. Bear intended to discharge the waste into the MMHF Disposal Pit. The alleged pollution does not qualify as a "pollution event."

The Umbrella Policy also excludes coverage for any allegation of bodily injury or property damage that arises out of the discharge, dispersal, seepage, migration, release or escape of pollutants. It further specifically excludes coverage for property damage arising out of or resulting from the contamination of oil, gas, water, mineral substances or other property by a saline substance. Clearly, the allegations in the Underlying Action are not covered by the Umbrella Policy.

**Conclusion**

Neither the Primary Policy nor the Umbrella Policy assign Colony the duty to indemnify or defend Bear in the Underlying Action. The motion for summary judgment [Docket No. 25] is hereby GRANTED.

IT IS SO ORDERED this 26th day of March, 2013.

**Dated this 26th day of March, 2013.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma